UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LISA A. WELLS,                        )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )          No.  1:13CV97 SPM
                                      )
CAROLYN W. COLVIN, Acting             )
Commissioner of Social Security,      )
                                      )
                    Defendant.        )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the Commissioner's final decision denying Lisa A. Wells's application

for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 401, *et seq.*, and application for supplemental security income under Title XVI

of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are pending before the

undersigned United States Magistrate Judge, with consent of the parties, pursuant

to 28 U.S.C. § 636(c).  Because the Commissioner's final decision is not supported

by substantial evidence on the record as a whole, it is reversed.

### I.  Procedural History

On October 23, 2009, the Social Security Administration denied plaintiff

Lisa A. Wells's September 9, 2009, applications for disability insurance benefits

(DIB) and supplemental security income (SSI), in which she claimed she became disabled on August 26, 2004, because of knee and back problems. (Tr. 61, 62, 64-67, 147-53, 154-59, 197.) Upon plaintiff's request, a hearing was held before an administrative law judge (ALJ) on September 28, 2011, at which plaintiff testified. (Tr. 29-54.) On November 18, 2011, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform her past relevant work as a security guard. (Tr. 12-23.) On May 9, 2013, upon review of additional evidence, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-7.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, arguing that the ALJ erred by finding her knee and shoulder impairments not to be severe and by failing to provide any explanation for this determination. Plaintiff also contends that the ALJ erred by discounting the opinion of her treating physician, Dr. Beyzer, and by appearing to rely instead on the opinion of a non-examining state agency consultant to find plaintiff not disabled. Plaintiff requests that the matter be remanded for further consideration.

## II. Testimonial Evidence Before the ALJ

At the hearing on September 28, 2011, plaintiff testified in response to

questions posed by counsel.

At the time of the hearing, plaintiff was forty-five years of age. Plaintiff stands five-feet, seven inches tall and weighs 250 pounds. Plaintiff has a high school education and obtained additional vocational training at a technical school. Plaintiff is single and lives with her father. Plaintiff has no household income but receives food stamps and Medicaid assistance. (Tr. 33, 35-36.)

Plaintiff's Work History Report shows that she worked as a certified nurse's assistant at a nursing home from 1984 to 1993. From 1993 to 2006, plaintiff worked as a security guard for security companies. (Tr. 215.) Plaintiff testified that she last worked as a security guard at a flight hangar and left that job on August 26, 2004, when she moved to a different state. (Tr. 33-34.) Plaintiff testified that she can no longer work because of her back, knees, and feet and because of shortness of breath. (Tr. 36.)

Plaintiff testified that she injured her back in a motor vehicle accident in 2003 and that the condition has worsened since that time. (Tr. 36-37.) Plaintiff testified that she has a herniated disc and pinched nerves in her back and that she takes pain medication for the condition. (Tr. 38-39.) Plaintiff testified that her doctor has suggested steroid injections or surgery, but she does not want to undergo surgery because she would no longer be able to lift more than fifteen pounds. Plaintiff testified that she currently has difficulty lifting fifteen pounds

because of her back pain and knee problems.  (Tr. 39-40.)

Plaintiff testified that she injured her knees while working in the medical field and that the condition has worsened since that time, and especially with swelling in the left knee.  Plaintiff testified that she has had surgery on both knees, with her most recent surgery having occurred in the 1990's.  (Tr. 37, 41.)

Plaintiff testified that she experiences swelling in her feet and ankles every day when she walks or sits and has experienced the condition for several years. Plaintiff testified that her doctors do not know the cause.  (Tr. 37-38, 41.)  Plaintiff testified that she sits in a recliner for three to four hours with her feet elevated to relieve the swelling.  Plaintiff testified that wearing shoes is uncomfortable, and she wears them only when she leaves the house.  (Tr. 42.)

Plaintiff testified that she experiences shortness of breath when she takes long walks and has experienced the condition for a couple of years.  Plaintiff testified that she is unaware of the cause.  (Tr. 36-38.)  Plaintiff testified that chest pain is sometimes associated with her shortness of breath.  (Tr. 49.)

Plaintiff testified that she also has problems with her right shoulder in that she experiences pain when she leans on it or tries to pick up things.  Plaintiff testified that her doctor told her that she had a rotator cuff tear and would eventually need surgery.  Plaintiff testified that she had no other problems with her arms or hands.  (Tr. 44-45.)

Plaintiff testified that cold weather worsens her pain and that stooping worsens her back pain. (Tr. 45-46.) Plaintiff testified that she takes Hydrocodone once a day, which helps relieve the majority of her pain. Plaintiff testified that she experiences no side effects from any of her medications. (Tr. 48, 51.)

Plaintiff testified that she recently began treatment for depression but had problems with depression and anger for years. Plaintiff testified that she always has had difficulty getting along with people but has become more short-tempered within the previous few years. (Tr. 46-47, 53.) Plaintiff testified that she sleeps only an hour or two every day because of constant worry. Plaintiff testified that she occasionally experiences headaches with increased stress. (Tr. 47-48.) Plaintiff estimated that she stays in bed approximately three days a month because of stress and back pain. (Tr. 52.)

As to her exertional abilities, plaintiff testified that she can walk through a grocery store for a couple of hours but must take a break after walking for one block outside because of back and knee pain. Plaintiff testified that she can sit for twenty minutes before she must stand up and move around. Plaintiff testified that she can stand in one place for ten minutes before she must sit or move around because of back pain. (Tr. 49-50.) Plaintiff testified that she can lift a gallon of milk, but that lifting two gallons would be "pushing it." (Tr. 50-51.) Plaintiff testified that lifting a case of water or full tote bags worsens her back pain but that

she has no problems moving either arm in any direction.  (Tr. 51.)

As to her daily activities, plaintiff testified that she sleeps during the day and is awake at night because of her previous work on night shifts.  Plaintiff testified that she gets up around 5:00 p.m., prepares supper, gives her father his medication, feeds the cat, and then prepares her father to settle in for the evening.  Plaintiff testified that her father has many health issues and is on oxygen.  Plaintiff testified that she then watches television and spends time on the computer.  (Tr. 40-41.) Plaintiff testified that she likes to write as a hobby but has difficulty with concentration.  (Tr. 43.)  Plaintiff testified that she cleans the house, washes dishes, and sweeps the floor but has difficulty doing some household chores if she needs to bend over or go up and down stairs because of low back pain.  (Tr. 38, 40.) Plaintiff testified that she has no difficulty bathing or getting dressed.  (Tr. 42.) Plaintiff testified that she usually leaves the house only to go to the doctor's office because there is nowhere else to go in her "boring town."  (Tr. 43.)  Plaintiff testified that she does not prefer to stay home and sometimes spends time outside around the house.  (Tr. 43-44.)

### III.  Medical Evidence Before the ALJ

On December 2, 2003, plaintiff visited Dr. Alexander Beyzer at Albanna Neurosurgical Consultants (ANC) with complaints of neck pain and back pain associated with a motor vehicle accident that occurred three months prior.  Plaintiff

rated her pain at a level ten on a scale of one to ten.  Plaintiff had full range of motion about the cervical spine but limited range of motion with flexion and extension of the lumbar spine.  Straight leg raising was negative.  Tenderness was noted to palpation about the lumbosacral area.  X-rays of the cervical spine showed mild degenerative changes.  X-rays of the lumbosacral spine were unremarkable.  Dr. Beyzer diagnosed plaintiff with cervicalgia and lumbago and prescribed Vicodin.  Physical therapy was recommended.  (Tr. 257, 267, 271.)

On December 30, 2003, plaintiff visited Dr. Beyzer and reported her pain to currently be at a level three but that the pain continued to be aggravated with walking up and down steps.  It was noted that plaintiff was seeing a chiropractor and was taking Vicodin as needed.  Examination showed tenderness about the lumbosacral area with diminished range of motion.  Straight leg raising was negative.  Dr. Beyzer diagnosed plaintiff with lumbago, mainly myofascial in nature.  Dr. Beyzer recommended that plaintiff continue with chiropractic treatment.  (Tr. 266.)

Between December 16, 2003, and January 12, 2004, plaintiff participated in chiropractic therapy at ANC during which time plaintiff continued to exhibit pain and limited range of motion.  Plaintiff repeatedly reported the pain to worsen with climbing stairs.  Electrical stimulus, moist heat, and joint manipulation were administered during these sessions.   (Tr. 249-50, 300.)

Plaintiff returned to Dr. Beyzer on January 19, 2004, and reported improvement but that she continued to experience residual low back pain, especially when going up and down steps. Palpation of the lumbosacral area showed no tenderness, but range of motion continued to be diminished. Dr. Beyzer continued in his diagnosis of lumbago and instructed plaintiff to continue with chiropractic therapy. (Tr. 265.)

On February 24, 2004, plaintiff visited Dr. Beyzer and reported having continued pain in her neck and low back. Plaintiff reported the pain to increase with activity and to be relieved with rest. Plaintiff reported that chiropractic treatments provided only temporary relief. Some tenderness was noted about the cervical and lumbosacral areas. Plaintiff had full range of motion. Strength and reflexes were normal. Plaintiff was diagnosed with cervicalgia and lumbago. Plaintiff's prescription for Vicodin was refilled and manual mobilization was provided. (Tr. 264.)

An MRI of the cervical spine on February 24, 2004, was unremarkable except for a tiny protrusion to the right at C4-5. (Tr. 255.) An MRI of the lumbar spine showed a small broad-based right paracentral lateral recess protrusion with slight compression of the right S1 nerve root, as well as signal change at the conus at T11-12. (Tr. 256.)

Plaintiff returned to Dr. Beyzer on February 27, 2004, with continued

complaints of neck and low back pain after prolonged activity. Plaintiff had full range of motion and no tenderness. Upon review of the MRI results, Dr. Beyzer recommended that plaintiff participate in a home exercise program. (Tr. 263.)

On March 26, 2004, Dr. Beyzer noted mild tenderness and diminished range of motion about the lumbosacral area. Epidural steroid injections were recommended, but plaintiff declined. Plaintiff's Vicodin prescription was refilled. (Tr. 262, 287.)

On March 31, 2004, plaintiff returned to ANC for chiropractic therapy and complained of continued low back pain that worsens with taking stairs or driving over bumps in the road. Plaintiff reported that taking Vicodin and resting provided relief. Examination showed plaintiff to walk with a normal gait. Tenderness was noted about the lumbar spine with hypertonicity. Flexion and extension were limited, as well as rotation of the trunk. Straight leg raising was negative bilaterally. Deep tendon reflexes and strength were normal. Electrical stimulus and stretching of the lumbosacral spine was administered. It was noted that plaintiff was scheduled to begin physical therapy. (Tr. 258.)

Plaintiff visited Total Rehab on April 5, 2004, who noted plaintiff's complaints of low back pain radiating to her buttocks. Plaintiff reported the pain to worsen with bending, taking stairs, sitting longer than two to three hours, and lying flat for more than five minutes. Plaintiff had full range of motion except for

extension, which was limited to seventy-five percent. Plaintiff participated in physical therapy and goals were set for a four-week plan. (Tr. 251.)

Between April 5 and May 12, 2004, plaintiff participated in physical therapy on nine occasions. Plaintiff tolerated the therapy sessions but continued to complain of pain with taking stairs, lifting, and bending. On May 12, plaintiff had full range of motion and reported that her low back pain was much better but that she continued to have discomfort in the mid-back. (Tr. 252-53, 303.)

Plaintiff returned to Dr. Beyzer on May 12, 2004, and complained of mid-back discomfort. Plaintiff reported doing much better after physical therapy and that she was no longer taking Vicodin. Physical examination showed some mild tenderness in the mid-back area but was otherwise unremarkable. Dr. Beyzer diagnosed plaintiff with lumbago and myofascial pain and recommended that plaintiff continue with the TENS unit and with Lidoderm patches. (Tr. 261.)

On September 16, 2004, plaintiff reported to Dr. Beyzer that her back condition flared up when she helped her father get up after a fall. Plaintiff rated her pain to be at a level three or four and reported the pain to worsen with standing and walking. Plaintiff had full range of motion, but mild tenderness upon palpation was noted. Plaintiff was diagnosed with lumbago and lumbar sprain/ strain. Plaintiff was given Vicodin to take at bedtime and was advised to take over-the-counter ibuprofen otherwise. It was noted that plaintiff was moving to

Nevada.  (Tr. 260.)

Plaintiff underwent a physical for the Division of Family Services on September 8, 2009, the results of which were normal.  (Tr. 275.)

On October 19, 2009, plaintiff underwent a physical examination with Family Nurse Practitioner April Piland and complained of knee and back problems for which she took Tylenol Arthritis.  Plaintiff also reported having shortness of breath with walking and climbing stairs, swelling in her feet and ankles, pain and swelling in her joints, and an inability to lie flat.  Physical examination showed diminished breath sounds but without wheezes or rhonchi, no peripheral edema, and abdominal obesity.  Plaintiff had limited range of motion about the right shoulder and diminished strength in the right hand and arm.  Some pain and tenderness was noted in the right deltoid region, but no muscle atrophy was noted. Limited range of motion was noted about the knees bilaterally and with forward flexion of the hips.  No abnormalities were noted about the ankles or cervical spine.  Limited range of motion was noted with flexion and extension of the lumbar spine.  Straight leg raising was negative but with limited range of motion. Lower extremity weakness was noted to be 4/5.  Plaintiff had no reflex abnormalities.  Plaintiff could heel/toe walk and had a normal gait and station. Plaintiff could not squat and needed assistance getting on and off of the examination table.  (Tr. 276-81.)

On October 22, 2009, plaintiff visited Dr. Beyzer with complaints of pain in her back and right shoulder for which she took Tylenol. Plaintiff reported the shoulder pain to have begun several months prior and that she had difficulty lifting her shoulder and had pain in her right biceps. Plaintiff denied any chest pain or shortness of breath. Dr. Beyzer noted plaintiff's history of back pain and that she continued to have difficulty standing and walking. Plaintiff reported that she has not had recent diagnostic testing because of a lack of insurance. Dr. Beyzer noted that plaintiff had moved to Nevada in 2004 and moved back to Missouri in 2009. Physical examination showed tenderness about the right shoulder, biceps, and acromion with limited range of motion. Impingement sign was positive on the right. Plaintiff had full range of motion of the cervical spine but limited range of motion and tenderness about the lumbar spine. Tightness was noted in the hamstrings. Plaintiff had full muscle strength but diminished deep tendon reflexes. Plaintiff was noted to have an antalgic gait but with intact coordination. An x-ray of the right shoulder showed possible linear fracture of the distal end of the acromion of undetermined age. Dr. Beyzer diagnosed plaintiff with right shoulder pain, positive impingement syndrome on the right, lumbar degenerative disc disease, and shoulder fracture. Plaintiff was given Vicodin for pain control and Voltaren gel. (Tr. 322-23, 334.)

On October 23, 2009, Lisa Spratt with disability determinations completed a

Physical Residual Functional Capacity (RFC) Assessment wherein she opined that plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; was unlimited in her ability to push and/or pull with her upper and lower extremities; could occasionally kneel and/or crouch but otherwise could frequently engage in all postural activities; and had no manipulative, visual, communicative, or environmental limitations. (Tr. 55-60.)[1]

An MRI of the right shoulder on October 29, 2009, showed a full thickness longitudinal delaminating tear of the distal supraspinatus tendon without retraction; distal tendinosis with partial thickness tears affecting the infraspinatus and subscapularis tendons; and glenohumeral effusion with a small amount of free fluid in both the subacromial and subdeltoid bursae. (Tr. 308.) Dr. Beyzer advised plaintiff to seek an orthopedic consult and to continue with pain control. (Tr. 318, 321.)

Plaintiff returned to Dr. Beyzer on March 31, 2010, and complained of continued right shoulder pain, left knee pain with locking, bilateral foot pain, and back pain with walking and standing. Plaintiff reported that she still wanted to see

---

[1] The Commissioner acknowledges in her Brief that Ms. Spratt is a single decision maker and not a medical consultant with disability determinations. (Deft.'s Brief, Doc. #20, at p. 9.)

an orthopedist for her shoulder condition. Physical examination showed limited range of motion and tenderness about the right shoulder and limited range of motion about the left knee. No tenderness was noted about the feet. Plaintiff had full muscle strength but diminished deep tendon reflexes. Dr. Beyzer diagnosed plaintiff with right shoulder rotator cuff tear, lumbago due to degenerative joint disease, lumbar spondylosis, knee pain, and foot pain. Plaintiff was prescribed Voltaren gel and Norco. (Tr. 316-17.)

An MRI of the left knee on March 31, 2010, showed very little normal meniscal tissue in the region of the posterior horn of the medial meniscus suggesting chronic degradation, significant superimposed tearing, and/or prior surgical debridement; multiple shallow focal chondroses involving the articular cartilage of the medial compartment; significant patellar chondromalacia; and joint effusion. (Tr. 312-13.) An MRI of the right knee showed degenerative changes with no evidence of acute meniscal tear; joint effusion, prepatellar soft tissue swelling, and popliteal fossa cyst; and significant patellar chondromalacia. (Tr. 310-11.) An MRI of the lumbar spine showed very large paracentral/inferior herniation at L5-S1 with associated extruded fragment causing central canal encroachment, right foraminal encroachment, and impingement of the right S1 and S2 traversing nerve roots. (Tr. 309.) An MRI of the right ankle showed posterior tibial tendonitis, peroneal tendonitis, and soft tissue swelling throughout the ankle.

(Tr. 307.)  An MRI of the left ankle showed soft tissue swelling and peroneal tendonitis.  (Tr. 305.)  MRIs of the right and left foot showed soft tissue swelling but were otherwise unremarkable.  (Tr. 304, 306.)

Plaintiff returned to Dr. Beyzer on April 27, 2010, and continued with her complaints of pain.  Plaintiff reported having trouble going up and down stairs.  Plaintiff also reported being depressed.  Physical examination showed no change.  Upon review of the MRI results, Dr. Beyzer diagnosed plaintiff with large herniated disc at L5-S1, foraminal stenosis, degenerative joint disease of the knees, tibial tendonitis, obesity, and depression.  Plaintiff was prescribed Xanax and Norco and was referred to psychiatry.  Dr. Beyzer wrote in this treatment note, "In my medical opinion, patient is unable to return to work and qualified for disability."  (Tr. 314-15.)

Plaintiff visited Dr. Georgette Johnson on September 8, 2010, for a psychological evaluation for Medicaid eligibility.  Plaintiff reported being angry as a child, depressed during her adolescent years, and behaviorally disruptive throughout her school years.  Plaintiff reported having been abused when she was younger.  Plaintiff reported that she has been a caregiver her entire life and was currently caring for her father.  Plaintiff reported not having been psychiatrically hospitalized and that she currently was not taking prescribed medication for psychiatric reasons.  Plaintiff reported current symptoms of major depression and

generalized anxiety, including feeling down, angry, upset, stressed, nervous, anxious, recent onset of crying, and worry. Dr. Johnson noted plaintiff's mood and affect to be congruent with anger and dysphoric mood. Plaintiff became tearful and started crying when discussing difficult life experiences. Dr. Johnson also noted that plaintiff appeared to experience anxiety associated with post-traumatic stress with flashbacks to intrusive memories. Plaintiff reported having sleep and appetite disturbance. Mental status examination showed plaintiff to have appropriate hygiene but to have poor eye contact. Plaintiff's affect was inappropriate and her mood dysphoric. Dr. Johnson noted plaintiff to be irritable, agitated, and evasive and to have a sarcastic and abrasive demeanor. Long term memory was mildly impaired. Dr. Johnson noted plaintiff not to be overly psychotic, and there was no evidence of reality impairment. Dr. Johnson diagnosed plaintiff with depressive disorder, rule out bipolar disorder; generalized anxiety disorder with features of post-traumatic stress disorder, rule out panic disorder and intermittent explosive disorder; reported history of alcohol abuse; and primary insomnia. Dr. Johnson assigned a Global Assessment of Functioning (GAF) score of 51. Dr. Johnson recommended that plaintiff be evaluated by a psychiatrist for diagnostic clarity and medication assessment, consider counseling services, and be further examined medically regarding her lingering pain and orthopedic impairments. (Tr. 346-51.)

On September 10, 2010, a non-treating physician completed a Medical Report for the Family Support Division of Missouri's Department of Social Services in which he identified back pain to be plaintiff's primary diagnosis and opined that there was no objective evidence of disability and that plaintiff should be able to do sedentary work. (Tr. 352-53.)

On January 18, 2011, plaintiff visited Dr. Darryl Green at Perryville Family Clinic with complaints of shortness of breath, low back pain radiating to the hips, and shoulder pain. Plaintiff reported her back pain to be constant, moderate, aching, and sharp. Plaintiff reported the pain to worsen with movement but that she gets some relief with narcotic pain medication, Tylenol, rest, and sitting. Plaintiff described her shoulder pain to be moderate but worsening. Plaintiff reported trying Hydrocodone for her shoulder pain. Plaintiff reported having shortness of breath for about two years but that the condition had been stable. Plaintiff reported the condition to be worsening with exertion and lying flat. Dr. Green noted plaintiff's surgical history to include four arthroscopic surgeries on her knees in the 1990's. Respiratory examination was normal. No edema was noted. Dr. Green noted plaintiff to exhibit pain with range of motion about the right shoulder, flexion and extension of the back, and lateral flexion of the back. Dr. Green diagnosed plaintiff with low back pain, shoulder pain, and decreased exercise tolerance with exertional chest pain. Plaintiff was instructed to continue

with the home exercise program and lose weight. Plaintiff was prescribed Ultram and was referred to a chronic pain specialist. Diagnostic and laboratory tests were ordered. (Tr. 335-37.)

On January 25, 2011, Dr. Beyzer completed a Physical RFC Questionnaire in which he noted his treatment of plaintiff to begin in October 2009 and that he had treated plaintiff on four occasions through April 2010 for her conditions of herniated disc, right rotator cuff tear, bilateral degenerative joint disease of the knees, and bilateral foot pain. Dr. Beyzer reported that plaintiff experienced pain and swelling with these conditions and that objective evidence of such conditions included positive straight leg raising, limited motion, and stiffness. Dr. Beyzer reported plaintiff to have had limited response to treatment. Dr. Beyzer opined that plaintiff had no psychological conditions that contributed to her physical condition. Dr. Beyzer opined that plaintiff's pain and other symptoms would constantly interfere with attention and concentration needed to perform simple work tasks. Dr. Beyzer opined that plaintiff was capable of high stress work. As to her exertional abilities, Dr. Beyzer opined that plaintiff could walk one city block without rest or severe pain, could sit and/or stand continuously for twenty minutes before changing positions, and could sit and stand/walk for a total of less than two hours each during an eight-hour workday. Dr. Beyzer opined that plaintiff would need to walk every ten minutes for about ten minutes each time. Dr. Beyzer

opined that plaintiff would need a job that allowed for shifting of positions at will between sitting, standing, and walking. Dr. Beyzer opined that plaintiff would need to take six or seven unscheduled twenty-minute breaks during an eight-hour workday. Dr. Beyzer further opined that plaintiff needed to elevate her legs with prolonged sitting and should use an assistive device with occasional standing or walking. Dr. Beyzer opined that plaintiff could occasionally lift and carry less than ten pounds but never an amount ten pounds or greater. Dr. Beyzer opined that plaintiff could occasionally or frequently engage in rotation of the neck but could never twist, stoop, bend, crouch/squat, climb ladders, or climb stairs. Dr. Beyzer also opined that plaintiff had limitations bilaterally with reaching, handling, and fingering. Dr. Beyzer estimated that plaintiff would miss work more than four days a month because of her impairments or treatment therefor. (Tr. 341-45.)

On February 23, 2011, plaintiff underwent an EKG which yielded normal results. Dr. Paul H. Holcomb noted plaintiff to nevertheless have exertional chest discomfort and multiple cardiac risk factors, including hypertension and some congestive heart failure. Dr. Holcombe questioned whether plaintiff had obstructive sleep apnea. Dr. Holcombe ordered additional diagnostic tests, including a Persantine Cardiolite study since plaintiff "cannot walk." (Tr. 358-59.)

Plaintiff returned to Dr. Green on February 25, 2011, and complained of decreased exercise tolerance with exertional chest pain. Plaintiff reported

associated anxiety and dyspnea.  Plaintiff also complained of shoulder pain and low back pain.  No musculoskeletal examination was conducted.  Respiratory and cardiovascular examinations were normal.  Laboratory testing was ordered.  (Tr. 440-42.)

A Persantine Cardiolite study conducted on March 9, 2011, yielded normal results.  (Tr. 387-88.)  An echocardiogram conducted on March 14 yielded normal results.  (Tr. 394.)  A sleep study conducted on March 17 yielded findings of obstructive sleep apnea.  It was recommended that plaintiff return for a CPAP titration.  (Tr. 406.)  Plaintiff returned on May 18 for such titration but woke up early in the study due to back pain and could not go back to sleep.  (Tr. 412.)

Plaintiff visited Dr. Ross D. Andreassen at Advanced Pain Center on March 15, 2011, for evaluation of low back pain and knee pain.  Plaintiff reported the pain to be moderate to severe and at a level ten, with the pain severely interfering with most daily activities and sleep.  Plaintiff reported that all physical activities and any low back movement aggravated the pain and that nothing provided relief.  Plaintiff reported her current medications to include Hydrocodone, Lovastatin, and Tramadol.  Physical examination showed plaintiff to have normal range of motion about the cervical and thoracic spine, as well as about the right and left upper extremities and right lower extremity.  Moderate tenderness was noted about the lumbar spine with decreased muscle strength about the right and left illiopsoas.

Reflexes and sensation were normal. Dr. Andreassen noted plaintiff's left knee to sometimes lock with flexion. Mental status examination was normal. Dr. Andreassen diagnosed plaintiff with lumbar intervertebral disc disorder without myelopathy, lumbosacral spondylosis without myelopathy, and osteoarthritis localized primarily to the lower leg. Dr. Andreassen prescribed Tramadol and instructed plaintiff to continue with a home exercise program. (Tr. 435-39.)

Plaintiff returned to Dr. Andreassen on April 12, 2011, and reported her pain to be at a level eight with some improvement. Plaintiff continued to complain of sleeping problems. Dr. Andreassen continued plaintiff on her medications of Tramadol and Hydrocodone and instructed plaintiff to continue with her home exercise program. (Tr. 431-34.)

Plaintiff visited Dr. Brandon Scott, a neurosurgeon, on May 6, 2011, and reported having worsening low back pain that increased with activity. Physical examination showed plaintiff to have full motor strength throughout the bilateral upper and lower extremities. Plaintiff was noted to ambulate well. Straight leg raising was negative. Sensation was intact, and plaintiff had normal reflexes bilaterally in the upper and lower extremities. Mental status examination was unremarkable. Dr. Scott determined plaintiff's exam to be within normal limits. Upon review of the March 2010 MRI of the lumbar spine, Dr. Scott recommended that the extruded lumbar disc fragments be removed with microscopic lumbar

laminectomy with discectomy on the right.  (Tr. 420-21.)

Plaintiff returned to Dr. Andreassen on May 17, 2011, for medication refills. Plaintiff reported her pain to be at a level seven.  Physical examination was unchanged.  No change was made to plaintiff's treatment regimen.  (Tr. 427-30.)

On July 11, 2011, plaintiff visited Dr. Abdul N. Naushad at Advanced Pain Center for medication refills.  Plaintiff reported her pain to be at a level nine. Physical examination showed no change.  Plaintiff was continued on her current treatment regimen.  (Tr. 423-26.)

Plaintiff visited Dr. Green on July 15, 2011, and reported worsening symptoms of anxiety, including irritability, depressed mood, excessive worry, fatigue, shortness of breath, stress, and anger.  Dr. Green noted the frequency of symptoms to be phobia-related with no true panic attacks having occurred.  Dr. Green noted plaintiff's other problems to include low back pain, obstructive sleep apnea, and hyperlipidemia.  Dr. Green diagnosed plaintiff with anxiety.  Plaintiff's Lovastatin prescription was refilled for hyperlipidemia.  (Tr. 445-47.)

## IV.  Records Submitted to the Appeals Council[2]

Plaintiff visited Dr. Naushad on September 8, 2011, and reported her pain to

[2] In making its determination to deny review of the ALJ's decision, the Appeals Council considered additional evidence which was not before the ALJ.  The Court must consider this additional evidence in determining whether the ALJ's decision was supported by substantial evidence.  *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); *Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir. 1994).

be at a level eight.  Plaintiff reported her medications to help manage the pain and that her daily functioning and sleep were improving.  Plaintiff had no new complaints.  Dr. Naushad determined to keep plaintiff on her current treatment regimen.  (Tr. 453-55.)

Plaintiff underwent a psychiatric evaluation on September 19, 2011, upon referral by her family doctor who suspected she may have bipolar disorder. Plaintiff reported her history of feeling anxious and depressed for years as well as her history of being abused.  Plaintiff reported that she spent most of her life taking care of others and neglecting herself.  Plaintiff reported being currently anxious and depressed because of stress.  Mental status examination showed plaintiff to be cooperative and communicative.  Plaintiff's thought processes were logical and organized.  Plaintiff's affect and mood were noted to be anxious.  Plaintiff was oriented times three and had no suicidal or homicidal ideations.  Dr. Kishore Khot diagnosed plaintiff with major depression-recurrent and generalized anxiety disorder and assigned a GAF score of 55.  Plaintiff was prescribed Celexa, Ativan, and Ambien.  (Tr. 522-23, 533.)

On October 18, 2011, plaintiff failed to appear for a scheduled appointment with Dr. Khot.  (Tr. 532.)  On October 28, Lorazepam and Ambien were prescribed for plaintiff.  (Tr. 531.)

In September and October 2011, plaintiff visited Advanced Pain Center for

continued management of her chronic low back pain as well as with complaints of tenderness and swelling about the left knee and lower leg.  Plaintiff reported her pain to be mild to moderate and sometimes severe – ranging between levels six and eight, and that her medications help manage the pain.  Plaintiff reported her daily activities and sleep to have improved, but that any physical activity aggravates the pain.  Physical examination showed plaintiff to have mild to moderate tenderness about the lumbar spine and left knee but no muscle spasm, abnormal gait, or muscle weakness.  Plaintiff was continued on her same medication regimen of Tramadol and Hydrocodone.  (Tr. 612-19.)

Plaintiff returned to Dr. Khot on November 9, 2011, who noted plaintiff to be stable on her medications.  Plaintiff reported having no new stressors.  Mental status examination showed plaintiff to continue to have an anxious mood and affect, but was otherwise normal.  Dr. Khot continued in his diagnoses and instructed plaintiff to increase her dosages of Celexa and Ativan.  (Tr. 530.)

An incomplete record from Dr. Ben Lanpher shows plaintiff to have undergone a psychological evaluation, presumably in January 2012 (Tr. 485-87), from which Dr. Lanpher opined that plaintiff was "mildly to moderately impaired in her ability to understand and remember instructions.  She is perceived as being moderately impaired in her ability to sustain concentration.  She is perceived as being markedly impaired in her ability to interact socially and adapt to her

environment." (Tr. 487.)

Plaintiff returned to Dr. Khot on March 22, 2012, who noted plaintiff to be stable on her medications but to be experiencing greater anxiety because of her father's health and mortgage issues. Mental status was unchanged, and Dr. Khot instructed plaintiff to increase her dosage of Ativan. (Tr. 528.)

X-rays of the left knee on March 26, 2012, showed small effusion and mild degenerative osteoarthritic changes involving the patellofemoral and femorotibial compartments. (Tr. 505.)

On June 19, 2012, plaintiff failed to appear for a scheduled appointment with Dr. Khot. Plaintiff canceled her rescheduled appointment on June 26. (Tr. 527.) On July 3, plaintiff visited Dr. Khot who noted plaintiff to be stable on her medications. Plaintiff was continued on her medications. (Tr. 526.)

X-rays of the left and right foot on July 19, 2012, were normal. (Tr. 509-10.) X-rays of the right ankle showed soft tissue thickening over the lateral malleolus. X-rays of the left ankle were normal. (Tr. 511-12.)

Pulmonary function tests performed September 10, 2012, in response to plaintiff's complaints of shortness of breath showed no evidence of obstruction. (Tr. 516.)

Plaintiff returned to Dr. Khot on October 16, 2012, and reported that her father had recently passed away. Plaintiff reported that her medication helps her

get through things.  Mental status examination showed plaintiff's mood and affect to be sad but was otherwise normal.  Plaintiff was instructed to continue with her medications and to return in four months for follow up.  (Tr. 524.)

On October 30, 3012, Dr. Khot completed a Mental RFC Questionnaire in which he noted plaintiff's medications to have helped reduced her symptoms but not with respect to occupational findings.  Dr. Khot opined that plaintiff was unable to meet competitive standards or had no useful ability to function in nearly all categories describing the mental abilities and aptitudes needed to do unskilled work, or to interact appropriately with others or adhere to basic standards of neatness and cleanliness.  Dr. Khot reported that plaintiff had frequent emotional breakdowns with crying spells, poor memory, and poor ability to adapt to change.  Dr. Khot opined that plaintiff's mental impairments worsened her experience of pain and other physical symptoms and would cause her to be absent from work at least three days a month.  Dr. Khot reported that plaintiff experienced these limitations beginning September 19, 2011.  (Tr. 556-60.)

Between January and October 2012, plaintiff continued to visit Dr. Green for follow up of her hypertension and hyperlipidemia.  Although Dr. Green noted plaintiff's low back pain to be a continual problem and noted her continued prescriptions for Tramadol and Hydrocodone, he performed no musculoskeletal examinations during this period.  (Tr. 534-52.)

Plaintiff continued to visit Advanced Pain Center on a monthly basis in 2012 for management of her chronic back pain. Plaintiff also complained of bilateral shoulder and foot pain during this period. Plaintiff reported her pain to be at levels five or six and reported her daily functioning and sleep to improve with medications. Examination of the back continued to show mild to moderate tenderness about the lumbar spine, with no muscle spasm or weakness and no abnormality of gait. Plaintiff was continued on her medication regimen throughout this period. (Tr. 563-611.)

In November 2012, plaintiff was prescribed Albuterol inhaler for her symptoms of shortness of breath. A repeat sleep study for CPAP titration showed plaintiff to have severe sleep apnea. (Tr. 625-27.)

### V. The ALJ's Decision

The ALJ found plaintiff to meet the insured status requirements of the Social Security Act through December 31, 2009. The ALJ found that plaintiff had not engaged in substantial gainful activity since August 26, 2004, the alleged onset date of disability. The ALJ found plaintiff's disorder of the back to be her only severe impairment, and that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found plaintiff to have the RFC to perform

light work[3] except that she was unable to stoop or kneel more than occasionally. The ALJ found plaintiff able to perform her past relevant work as a security guard and thus found that plaintiff was not under a disability from August 26, 2004, through the date of the decision.  (Tr. 15-23.)

## VI.  Discussion

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§  404.1567(b), 416.967(b).

1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir.

2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir.

1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall*, 274 F.3d at 1217 (*citing Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

For the following reasons, the ALJ's decision is not supported by substantial evidence on the record as a whole, and that matter must be remanded for further proceedings.

In his written decision, the ALJ found plaintiff's only severe impairment to be her disorder of the back. With respect to plaintiff's claimed right shoulder pain and bilateral knee and foot pain, the ALJ found these impairments not to be severe inasmuch as they did not cause more than slight abnormalities expected to result in more than minimal, if any, work-related limitations. (Tr. 18.) Because the record demonstrates plaintiff's shoulder impairment to be severe and that the ALJ erred in

failing to consider the effects of this impairment, the matter will be remanded for further consideration.

At Step 2 of the sequential analysis, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue,* 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities include, *inter alia*, physical functions such as lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Kirby,* 500 F.3d at 707 (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)). While the claimant bears the burden to establish that her impairment or combination of impairments is severe, *id.* at 707-08 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)), the burden is not great. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Here, the record does not support the ALJ's conclusion that plaintiff's shoulder impairment was not severe. While the ALJ noted FNP Piland's October

2009 examination that showed minimal limitation with range of motion about the shoulder, Dr. Beyzer's October 2009 examination that showed limited range of motion and tenderness about the shoulder, and Dr. Beyzer's diagnoses of right shoulder pain and positive impingement syndrome on the right (*see* Tr. 20), the ALJ wholly failed to acknowledge FNP Piland's finding of diminished strength in the right arm and Dr. Beyzer's additional diagnosis of right shoulder fracture. The ALJ also failed to acknowledge x-ray results that showed such fracture, as well as October 2009 MRI results showing a full tear of the right rotator cuff. Nor did the ALJ acknowledge Dr. Beyzer's resulting recommendation for orthopedic consult, plaintiff's continued pain and limited range of motion about the shoulder in March 2010, and Dr. Beyzer's continued diagnosis of right rotator cuff tear. In addition, a review of the record *in toto* shows plaintiff to have continued to complain of right shoulder pain through February 2011, with examination in January 2011 showing plaintiff to exhibit pain with range of motion of the right shoulder. As such, the ALJ's conclusion that plaintiff's shoulder impairment did not constitute a severe impairment appears to be based upon an incomplete review of the record.[4]

A review of the record as a whole shows clinical findings of right shoulder

---

[4] The ALJ discounted the limitations set out in Dr. Beyzer's January 2011 RFC Questionnaire for the reason that such limitations were "inconsistent with his treatment notes." (Tr. 22.) Given the ALJ's incomplete review of the record, including Dr. Beyzer's treatment notes, this reason to discount Dr. Beyzer's opinion is not supported by substantial evidence on the record.

pain, diminished strength, and limited range of motion; diagnostic testing demonstrating right shoulder fracture and full rotator cuff tear; and medical diagnoses of these conditions. With such extensive objective and clinical evidence, it cannot be said plaintiff did not meet the low threshold demonstrating that her right shoulder impairment was severe. *Contra Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011) (condition did not constitute severe impairment where the record was void of diagnostic testing, the claimant worked for several years with condition with no evidence that condition worsened, and condition responded to medication). The ALJ therefore erred at Step 2 of the sequential analysis in finding plaintiff's right shoulder impairment not to be severe.[5]

In addition, a review of the decision shows that, subsequent to Step 2, the ALJ essentially removed the effects of plaintiff's shoulder impairment from consideration in determining plaintiff's RFC. Because the ALJ failed to consider the effects of this known medically determinable shoulder impairment, his RFC assessment cannot be said to be supported by substantial evidence. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). *Cf. Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (per curiam) (misunderstanding of impairment and failure to find it

---

[5] In contrast to the evidence of record relating to plaintiff's shoulder impairment, evidence of plaintiff's knee impairment shows plaintiff's complaints to be more intermittent in nature and not to meet the 12-month durational requirement. In addition, unlike the ALJ's consideration of plaintiff's shoulder impairment, the ALJ acknowledged the objective evidence of record underlying plaintiff's knee impairment. (*See* Tr. 20-21.)

to be severe may affect RFC findings); *Cunningham v. Apfel*, 222 F.3d 496, 501

(8th Cir. 2000) (ALJ obligated to consider combined effects of impairments);

*Henning v. Colvin*, 943 F. Supp. 2d 969, 993-94 (N.D. Iowa 2013) (ALJ must

consider symptom-related limitations and restrictions of medically determinable

impairments). This is especially true here where the RFC determination is silent as

to any restrictions on plaintiff's use of her right upper extremity. While the

Commissioner argues that this impairment cannot support plaintiff's claim of

disability inasmuch as she did not make any relevant complaints until 2009 and

appeared to acknowledge at the September 2011 hearing that she was no longer

limited by the impairment, the undersigned notes that it is possible for a claimant

to have a period of disability for a time in the past even though she does not now

have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ erred

in his failure to acknowledge this impairment to be severe at any time during the

period of alleged disability.

Where an ALJ errs by failing to find an impairment to be severe at Step 2,

such error is harmless if the ALJ finds the claimant to suffer from another severe

impairment, continues in the evaluation process, and considers the effects of the

impairment at the other steps of the evaluation process. *See Coleman v. Astrue*,

No. 4:11CV2131 CDP, 2013 WL 665084, at *10 (E.D. Mo. Feb. 23, 2013). Here,

although the ALJ identified plaintiff's back disorder to be a severe impairment and

continued in the sequential analysis, he wholly failed to consider the effects of plaintiff's shoulder impairment in this process. When coupled with the ALJ's incomplete review of the record, it cannot be said that the ALJ's error in failing to consider plaintiff's shoulder impairment to be severe was harmless. *Id.* at *11.

Accordingly, substantial evidence on the record as a whole does not support the ALJ's decision, and this matter must be remanded to the Commissioner for further consideration. Upon remand, the Commissioner shall consider all evidence of record, including the additional evidence submitted to the Appeals Council, and determine in the first instance the extent to which the combination of plaintiff's medically determinable physical and mental impairments,[6] both severe and non-severe, affected her ability to engage in work-related activities at any time during the period of alleged disability. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). The Commissioner is reminded that the determination of plaintiff's RFC must be based on some medical evidence on the record, *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007), and that the opinion of a single decision maker does not constitute medical opinion evidence, *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007).

---

[6] In finding plaintiff's mental impairment not to be severe, the ALJ found it significant that plaintiff received no mental health treatment nor was prescribed medication for her mental impairment. The ALJ also found it significant that nothing in the record indicated any work-related limitations caused by plaintiff's mental impairment. (Tr. 17-18.) Inasmuch as additional evidence showing such treatment and opined limitations was considered by the Appeals Council and is now a part of the record, the Commissioner's determination as to the effects of plaintiff's mental impairment shall be reconsidered upon remand.

## VII.  Conclusion

Therefore, for all of the foregoing reasons, the Commissioner's adverse decision is not based upon substantial evidence on the record as a whole and the matter will be remanded to the Commissioner for further consideration consistent with the opinion set out herein.

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE


Dated this 14th day of May, 2014.